*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CLOSE/JONES, Minors.

UNPUBLISHED
September 15, 2022

No. 357938
Wayne Circuit Court
Family Division
LC No. 2019-000615-NA

In re D. A. JONES, Minor.

No. 358902
Wayne Circuit Court
Family Division
LC No. 2019-000615-NA

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

In Docket No. 357938, respondent appeals as of right the trial court's orders terminating her parental rights to DAC, MBJ, MMJ, RDJ, and JMJ pursuant to MCL 712A.19b(3)(g) and (j). In Docket No. 358902, respondent appeals as of right a separate order terminating her parental rights to DAJ pursuant to MCL 712A.19b(3)(a)(*ii*), (g), and (j). For the reasons discussed below, we affirm.

## I. FACTUAL BACKGROUND

This case arises from the initial removal of seven children from respondent's care in 2019. During the proceedings, respondent gave birth to two additional children, who were also removed from her care. These appeals involve the six younger children.[1]

---

[1] The three oldest children, DMM, SMM, and SDM, were initially removed and taken into protective care, but respondent's parental rights to those children were not terminated. Those children were placed with their father and are not at issue in this appeal. The father of RDJ and

-1-

The children were initially taken into care after a domestic-violence incident. Responding to the scene, law-enforcement officers found stolen, loaded firearms accessible to the children. At the first preliminary hearing, Jasmine Byers of the Department of Health and Human Services (DHHS) testified that respondent had a history of using cocaine, marijuana, and alcohol. Byers testified that more than one of respondent's children were born positive for cocaine. Byers testified that, at a family-team meeting shortly after removal, respondent admitted that she had relapsed "on substances including alcohol and [m]arijuana[,]" and she admitted that she could not provide appropriate care for the children. However, during that same family-team meeting, respondent refused to participate in inpatient substance-abuse treatment. Respondent "refused and reported she's not willing to do in-patient treatment at this time." Testifying about respondent's history, Byers noted that she "did in-patient treatment on three different occasions. One being last year." Authorizing the petition, the referee ordered respondent to participate in individual therapy, attend parenting classes, undergo a psychological examination, obtain a legal source of income, maintain contact with the caseworker, and maintain safe and suitable housing. For reasons not entirely clear, the referee did not order substance-abuse services. A parent-agency treatment plan dated April 25, 2019, reflects that mother agreed to refrain from drug and alcohol abuse and participate in random drug and alcohol screens. At the dispositional review hearing on June 25, 2019, respondent did not object to the treatment plan, but she requested a housing referral and a parenting partner. The trial court granted her requests.

But it became evident that respondent's substance abuse was a primary issue in the proceedings. In September 2019, the trial court ordered that substance-abuse treatment and drug screening be added to respondent's treatment plan, noting that it was unclear why those services were not included in earlier orders. Despite referrals to several treatment programs and an order to submit drug screens, respondent failed to fully comply with either substance-abuse treatment or screening. During the lower-court proceedings, respondent missed 53 of 56 drug screens. She continued to use cocaine, marijuana, and alcohol—even during her subsequent pregnancies; and both of those children were born with medical issues because of respondent's drug use during pregnancy. Respondent admitted to using cocaine as late as March 2021. Respondent also failed to obtain housing, was not fully compliant with her mental-health treatment, and did not consistently visit all of the children even though petitioner provided her with bus passes and some visits were to be conducted via Zoom.

In May 2021, a termination hearing was held on a supplemental petition seeking termination of respondent's parental rights to DAC, MBJ, MMJ, RDJ, and JMJ. The trial court terminated respondent's parental rights to those children. In June 2021, a combined adjudication and termination hearing was held on an original petition seeking removal and termination of

---

DAC was initially involved in the proceedings, but his parental rights to RDJ and DAC were not terminated and those children were returned to his care. The father of MBJ and MMJ had his parental rights terminated. The fathers of JMJ and DAJ were not identified, and the trial court terminated the parental rights of those unknown fathers. None of the fathers is a party to these appeals.

respondent's parental rights to DAJ. The trial court found grounds to exercise jurisdiction over DAJ and also terminated respondent's parental rights to him. These appeals follow.

## II. LEGAL ANALYSIS

In both appeals, respondent argues that petitioner failed to make reasonable efforts to reunify the family by failing to rectify her substance abuse before implementing other aspects of her treatment plan. Respondent also argues that petitioner did not present clear and convincing evidence to support the statutory grounds for termination. We disagree with both claims.

## A. REASONABLE EFFORTS

Respondent argues that petitioner did not make reasonable efforts to reunify the family. We disagree. Generally, in order to preserve an issue for appeal, it must be raised in the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Respondent did not argue below that petitioner failed to make reasonable efforts toward reunification. Indeed, she never asserted in the trial court that the services offered were unreasonable or insufficient. Therefore, this issue is unpreserved. *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000) (explaining that "[t]he time for asserting the need for accommodation in services is when the court adopts a service plan"). Accordingly, we will review this unpreserved issue only for plain error affecting substantial rights. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). "To avoid forfeiture under the plain-error rule, the proponent must establish that a clear or obvious error occurred and that the error affected substantial rights." *Id.*

Generally, during the dispositional phase, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c) and MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Hicks*, 500 Mich at 85-86. The case-service plan must include, in relevant part, a schedule of services "to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." MCL 712A.18f(3)(d); see also *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). The parent should be given a reasonable time to make changes and benefit from services before termination of parental rights. See *Mason*, 486 Mich at 159. The trial court should regularly update the plan to account for the parent's progress and developing needs. *Id.* at 156. "While [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). To prove a claim of lack of reasonable efforts, respondent must show that she would have fared better had petitioner offered other services. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). In this case, respondent argues that petitioner should have required her to participate in inpatient drug treatment "the very minute she made admissions in her case." Respondent's argument lacks merit.

Respondent agreed to a treatment plan after the oldest children initially came into care. The treatment plan required her to participate in individual therapy and parenting classes, undergo

-3-

a psychological examination, obtain a legal source of income, maintain contact with the caseworker, and maintain safe and suitable housing. To be sure, respondent was not initially ordered to participate in substance-abuse treatment or screening. It is not entirely clear why. But the trial court recognized the situation and ordered respondent to participate in these services in September 2019, following the first dispositional-review hearing, and respondent was eventually referred to substance-abuse treatment numerous times.

Even after she was ordered to inpatient substance-abuse treatment, respondent did not complete or benefit from those services for a considerable time. The first referral occurred in July 2019, but was terminated in November 2019. She attended other outpatient programs in November 2019 and March 2020—but she discharged herself after a couple of days on both occasions. She also checked into the Genesis House on December 31, 2020. She discharged herself the next day. Moreover, despite the treatment offered, respondent was not compliant with random drug screens and continued to test positive for cocaine. Respondent told the foster-care worker, Ellie Lauer, as recently as March 2021, that she continued to use cocaine and alcohol in order to cope. During the proceedings, respondent gave birth to JMJ and DAJ, who both tested positive for cocaine at birth. On March 15, 2021, the trial court ordered respondent to participate in inpatient treatment. Respondent participated in another inpatient substance-abuse treatment program at Positive Images, and then began a second portion of the treatment during which she would be assisted in finding suitable housing. However, respondent discharged herself during the second portion of treatment against the advice of staff. At the beginning of her court-ordered stay at Positive Images, respondent submitted a positive screen. Later still, she checked herself into a different treatment center on May 4, 2021, but failed to provide any information regarding the treatment she was receiving. Lauer did not believe that respondent was receiving the treatment she needed or being drug-screened at that facility. Lauer only knew that the facility offered weekly group and individual therapy. In short, the evidence reflected that petitioner offered numerous substance-abuse services to respondent, as well as drug screening, but respondent failed to fully participate in those services. As a result, respondent failed to rectify her substance-abuse barrier. At the time of the hearing on the supplemental petition for termination, she had been sober for 60 days. Two years had passed since removal.

As the reasonableness of reunification efforts depends on the circumstances of a particular case, we reject respondent's request to hold that inpatient treatment should be required first in every case involving substance abuse. See *In re Fried*, 266 Mich App at 542-543. In this case, respondent was offered both inpatient and outpatient treatment in conjunction with other services, including parenting classes, parenting time with the children, and mental-health counseling. It was not unreasonable for petitioner to order these other services at the same time as substance-abuse treatment given the importance of some of the other services, particularly visitation and addressing respondent's mental-health concerns. Moreover, respondent cannot show that she would have fared better had different services been offered because substance-abuse services were offered but she did not benefit from those services for a considerable time. At no time did respondent request additional or different substance-abuse treatment and the record does not support that a reasonable likelihood existed that she would have completed other treatment had it been offered. In particular, respondent's argument that she should have been placed in a 90-day program is undercut by her failure to complete the shorter programs that were offered. Additionally, respondent herself claimed that she used drugs to help her "cope," highlighting that mental-health services were likely

-4-

necessary to help her fight her substance-abuse problem. Accordingly, respondent has not established plain error affecting her substantial rights in regard to reasonable efforts.

## B. STATUTORY GROUNDS

Respondent also briefly argues that petitioner failed to present clear and convincing evidence to terminate her parental rights under MCL 712A.19b(3)(g) and (j). We disagree. The trial court must find at least one of the statutory grounds for termination by clear and convincing evidence in order to terminate parental rights. *In re Gonzalez/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). If this Court finds that the trial court did not clearly err as to the existence of one ground for termination, this Court need not address any additional termination grounds. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Accordingly, we affirm the trial court's determination under subsection (j).

Under MCL 712A.19b(3)(j), termination is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." This statutory factor considers not only the harm that may result from the parent's conduct toward the child, but also harm that might reasonably result from the parent's conduct around the child, such as exposing the child to individuals with criminal backgrounds who might exploit the child or otherwise place the child at risk. See *In re White*, 303 Mich App 701, 712; 846 NW2d 61 (2014). A parent's "lengthy period of instability" stemming from mental-health issues, combined with a present and "continuing lack of judgment, insight, and empathy" for a child, is also relevant to this statutory ground. *In re Utrera*, 281 Mich App 1, 25; 761 NW2d 253 (2008). This Court has recognized that subsection (j) considers not only the prospect of physical harm, but also the risk of emotional harm. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Harm may also include the prospect that the parent's behavior would negatively influence the children. See *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012). The trial court must "scrutinize the likelihood of harm if the child were returned to the parent's home" at the conclusion of the child-protective proceedings, not at that exact moment in time. See *In re Pops*, 315 Mich App 590, 600; 890 NW2d 902 (2016).

The trial court did not clearly err in relying on this statutory ground. The record reflects that respondent had a long history—at least 14 years—of substance abuse that included alcohol and cocaine. Several of the children were born positive for cocaine, suffered withdrawals after birth, and were suspected of suffering from fetal-alcohol syndrome. Respondent lacked housing and income. Respondent also frequently missed parenting-time visits with some of the children, claiming that the visits were too overwhelming. In short, petitioner presented clear and convincing evidence of respondent's failure to consistently visit the children, comply with her treatment plan, and benefit from services, thus establishing that there was a reasonable likelihood of harm if the children were returned to her care. See *White*, 303 Mich App at 710-711. Accordingly, the trial court did not clearly err by finding that termination of respondent's parental rights to the children was proper under MCL 712A.19b(3)(j).

## C. BEST INTERESTS

Although respondent does not challenge the trial court's best-interests findings, a review of the record supports the trial court's determination. "Even if the trial court finds that the

Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Gonzalez/Martinez*, 310 Mich App at 434. "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted). "[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," are all factors for the court to consider when deciding whether termination is in the best interests of the child. *White*, 303 Mich App at 713. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714. On appeal, this Court places its focus on the child, rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

The trial court did not clearly err when it found that termination was in the children's best interests. The record reflects that the children were removed following a domestic-violence incident and the discovery of stolen, loaded firearms accessible to them. Several of the children were very young; one was born after the others were removed. Witnesses testified that adoption offered them needed stability and permanency. Respondent had a 14-year history of drug and alcohol addiction and generally did not comply with her treatment plan. Respondent also frequently missed parenting-time visits with several of the children, claiming the visits were overwhelming.

Affirmed in Docket Nos. 357938 and 358902.

/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates